SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| In the Matter of | ) | Arizona Supreme Court |
| | ) | No. SB-02-0103-D |
| THOMAS J. ZAWADA, | ) | |
| Attorney No. 5815 | ) | Disciplinary Commission |
| | ) | No. 98-2465 |
| Respondent. | ) | |
| _____ | ) | **O P I N I O N** |

DISCIPLINARY ACTION
**Respondent Suspended**

---

State Bar of Arizona                                    Phoenix
     by   John A. Furlong, Staff Bar Counsel

Thomas J. Zawada, Respondent                            Tucson
In Propria Persona

---

**J O N E S, Chief Justice**

¶1      We granted sua sponte review of this disciplinary matter in order to determine whether the Disciplinary Commission's recommended sanctions of prosecuting attorney Thomas J. Zawada were adequate in light of the objectives of lawyer discipline.  We hold they were not.

**I.   Facts and Procedural History**

¶2      At all times relevant, Zawada was a prosecutor in the Pima County Attorney's Office.  He prosecuted Alex Hughes in 1994 for various violent crimes, including first degree murder, all

stemming from a shooting incident that resulted in the death of one person. Hughes' defenses consisted solely of insanity and self-defense. Throughout Hughes' trial, Zawada was fully aware that each of the six mental health experts who examined Hughes in relation to the crimes in question, including those retained by the state, found him to be mentally ill.

¶3 Notwithstanding the insanity plea, a jury found him guilty of first degree murder, attempted second degree murder, aggravated assault, disorderly conduct, and felony flight. On appeal, this court reversed Hughes' convictions, finding that "the cumulative effect of [Zawada's] misconduct deprived [Hughes] of a fair trial." *State v. Hughes*, 193 Ariz. 72, 74, ¶ 1, 969 P.2d 1184, 1186 (1998). On remand, the trial court dismissed all charges, holding that Article 2, Section 10, of the Arizona Constitution, the double jeopardy clause, forbade retrial. This court affirmed that holding after observing that double jeopardy bars retrial when there is "intentional prosecutorial misconduct aimed at preventing an acquittal." *State v. Jorgenson*, 198 Ariz. 390, 391, ¶¶ 3-4, 10 P.3d 1177, 1178 (2000) (citing *Pool v. Superior Court*, 139 Ariz. 98, 109, 677 P.2d 261, 272 (1984)).

¶4 Subsequent to this court's ruling in *Hughes*, a Bar complaint was filed against Zawada alleging prosecutorial misconduct in the handling of the case. The matter went to hearing, following which the hearing officer determined Zawada's

2

acts of prosecutorial misconduct included (a) appeals to fear by the jury if Hughes was not convicted, (b) disrespect for and prejudice against mental health experts that led to harassment and insults during cross-examination, and (c) improper argument to the jury.

¶5     For example, during cross-examination of one of Hughes' mental health experts, Zawada implied that the expert fabricated his diagnosis to coincide with the defendant's theory of the case:

> I mean, you pick up Mr. Hughes as a . . . client for the court, initially, and you are not able to make any decision, and then what happens is after you are hired by the defense, you are able to come to a conclusion?

More improperly, in rebuttal argument, Zawada asserted that defense counsel paid his expert to fabricate a diagnosis:

> He knows the result he is looking for.  Subject comes in with schizophrenic-potential schizophrenic diagnosis.  He knows right there what he is looking for, and $950 later, yes, that's what he's got . . . .

Also in rebuttal, Zawada improperly argued that mental health experts in general create excuses for criminals:

> How about the Judge back there in New York, was it, that was infatuated with the secretary or somebody else and he followed her around and sent her notes and sent her letters and all kinds of things and wouldn't leave her alone.  I don't know if he stalked her or not, and ultimately they looked into the case a little bit.  You know what they did, *they created a syndrome for him to try to justify his action*.

(Emphasis added.)

¶6      The hearing officer concluded that Zawada's conduct, wholly unsupported by evidence of any kind, violated Ethical Rule ("ER") 1.1 (competence),[1] ER 3.1 (assertions made without good faith basis in law or fact), ER 3.4(e) (trial tactics unsupported by admissible evidence), and ER 8.4(d) (conduct prejudicial to the administration of justice).  As a result, the hearing officer recommended (a) that Zawada be censured and placed on probation for six months, (b) that he be required to attend fifteen hours of continuing education that addresses the effective use of and response to psychiatric and psychological testimony, (c) that he be prohibited from handling any case involving a significant mental health component until he completes the continuing education requirement, and (d) that he be assessed the costs and expenses of the disciplinary proceedings.

¶7      The Disciplinary Commission modified the hearing officer's recommended sanction by removing the probation and continuing education requirement and adding as a requirement a Member Assistance Program ("MAP") referral.  Zawada sought review of the Commission's decision and this court denied his petition. Nevertheless, the court, under Supreme Court Rule 59(i), determined, sua sponte, to review the proposed discipline and, in

---

[1]     The Disciplinary Commission did not agree that Zawada's conduct evidenced incompetence and therefore found no ER 1.1 violation.

4

light of the record, to decide whether the sanction should include a period of suspension.

## II. Discussion

### A. The Court Has Authority, Sua Sponte, to Review Zawada's Actions.

¶8        Zawada challenges this court's legal authority to take sua sponte review of the appropriate sanction in this case, arguing that Supreme Court Rule 53(e)(7) (subsequently renumbered Rule 59(i)) permits review only if the Commission has recommended suspension or disbarment, and where no timely petition for review is filed.  He argues that because neither of these requirements has been met, the Supreme Court cannot review this action. Zawada misreads this court's authority to review disciplinary matters.

¶9        "[T]he Supreme Court of Arizona has the exclusive jurisdiction to regulate the admission to the practice of law and the discipline of those admitted."  *In re Riley*, 142 Ariz. 604, 607, 691 P.2d 695, 698 (1984).   As a result, "the Bar Disciplinary Board and its committees are mere arms of this court and can have no greater jurisdiction or authority than this court."  *Id*. at 608, 691 P.2d at 699.   Under Zawada's interpretation of the rule, the court would be bound by the Commission's disciplinary decision, even though the Commission derives its authority and jurisdiction from the court.  Zawada contends that when the Commission recommends a sanction less than

suspension, the court has no jurisdiction to review that particular sanction. The result is illogical and inconsistent with case law as well as the Supreme Court Rules. *See id.; see also* Ariz. R. Sup. Ct. 32(a)(2) (This court may "discipline a member when it is satisfied that such member is not mentally or morally qualified to practice law *even though none of the specific grounds for discipline set forth in these rules exist.*") (emphasis added) (formerly Rule 31(a)(2)); Ariz. R. Sup. Ct. 33(b) (stating that the supreme court has power to impose, without limitation and on its own motion, the suspension of an attorney).

¶10    Rule 59 does not place the limitation on the court that Zawada urges. The Rule provides:

> If no timely petition for review of a commission recommendation of suspension or disbarment is filed, the disciplinary clerk shall prepare and file a certificate attesting to those facts, and transmit to the court copies of the commission report and related order, the certificate, and a form of judgment for signature and entry by the clerk of the court. Within sixty (60) days, the court, in its discretion, may decline review, or it may grant review sua sponte. If the court grants review, the record shall be transmitted to the clerk.

Ariz. R. Sup. Ct. 59(i). The rule is clear. The language merely addresses the procedures to be followed when no petition for review is filed. There is no suggestion that when a petition has been filed, the court is stripped of authority to review the case sua sponte on other issues. Were that the case, an attorney

6

subject to discipline could necessarily avoid review of certain issues raised in a disciplinary proceeding by filing a petition addressing other matters. The intent of the rule does not contemplate that result.

**B.   Standard of Review.**

¶11      "In disciplinary proceedings, this court is the ultimate trier of fact and law, requiring clear and convincing evidence of all facts." *In re Brady*, 186 Ariz. 370, 373, 923 P.2d 836, 839 (1996). Although the hearing officer's factual findings and the Commission's recommendations are not ultimately determinative, they deserve great weight. *Id.*

**C.   The Sanctions Imposed In Light of the Purposes of Lawyer Discipline.**

¶12      Lawyer discipline serves two main purposes:   (1) to protect the public and the courts and (2) to deter the attorney and others from engaging in the same or similar misconduct. *In re Kleindienst*, 132 Ariz. 95, 102, 644 P.2d 249, 256 (1982) (citing *In re Stout*, 122 Ariz. 503, 596 P.2d 562 (1974)). Accomplishing these objectives promotes and maintains confidence in the bar's integrity. *In re Horwitz*, 180 Ariz. 20, 29, 881 P.2d 352, 362 (1994). To this end, Arizona generally follows the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) ("ABA *Standards*") to help determine appropriate discipline. *In re Wolfram*, 174 Ariz. 49, 57, 847 P.2d 94, 102 (1993). ABA *Standard* 3.0 states that the court should consider

7

four factors: (1) the duty violated, (2) the lawyer's mental state, (3) the potential for actual injury or actual injury caused by the lawyer's misconduct, and (4) the existence of aggravating and mitigating factors. We also oversee the proportionality of discipline imposed in analogous cases. *In re Bowen*, 178 Ariz. 283, 286, 872 P.2d 1235, 1238 (1994). Viewed in its entirety, the record in this disciplinary matter clearly establishes that Zawada indeed engaged in intentional and egregious prosecutorial misconduct, and that serious consideration by this court of the appropriate sanction is fully warranted.

### (1) The Duty Violated

¶13    The hearing officer and the Commission found that clear and convincing evidence established Zawada's violations of ER 3.1 (assertions made without good faith basis in law or fact), ER 3.4(e) (trial tactics unsupported by admissible evidence), and ER 8.4(d) (misconduct prejudicial to the administration of justice).[2] We agree. Although the State Bar also alleged that

---

[2]    In addition to Zawada's improper cross-examination and argument regarding Hughes' mental health, the hearing officer and Commission found that Zawada also violated these three ERs when, in closing argument, he improperly invoked personal fear in the jury to create unfair prejudice. Zawada warned the jury of possible future consequences of its decision:

> You know, the next time you are out on a nice, pretty, sunny afternoon, perhaps with your family, and you are driving along the roads or maybe you are at a picnic, your radio is on and you hear about a murder or

8

Zawada violated ER 3.4(c) (knowing disobedience of an obligation under the rules), inexplicably the hearing officer did not find clear and convincing evidence that Zawada violated that rule. The hearing officer stated only that "[t]he 'knowing' component of 3.4(c) was not proven." We believe the hearing officer erred.

¶14　　　Ethical Rule 3.4(c) states:　"[A lawyer shall not] knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists[.]"　One such obligation is that a prosecutor cannot "imply unethical conduct on the part of an expert witness without having evidence to support the accusation." *Hughes*, 193 Ariz. at 86, ¶ 59, 969 P.2d at 1198 (citing *State v. Bailey*, 132 Ariz. 472, 479, 647 P.2d 170, 177 (1982)).　The record demonstrates with utmost clarity that Zawada knowingly disobeyed this obligation under the rule, placing him in direct violation of ER 3.4(c).　The Arizona Rules of Criminal Procedure permitted the defendant, Hughes, to present expert psychiatric and

---

something like that, or an aggravated assault, you think back to this case you are going to have to be able to say right then and there that you were convinced that the evidence was clear and convincing that this man was insane.　Not just paranoid schizophrenic, not mentally ill, not possibly mentally ill, but insane.　Because you know, you go back there in your deliberation now and you're sitting there and you can't imagine that day, ladies and gentlemen, when you hear this on the report and you can't say, yes, I was clearly convinced, you know, that the defendant carried his burden.

psychological testimony to support the defense of insanity.  In fact, the rules prescribe a detailed and specific role for mental health professionals to assess a criminal defendant's mental state.  *See* Ariz. R. Crim. P. 11.  Faced with such expert testimony for the defendant, a prosecutor has several options: he can rebut the testimony with controverting evidence; he can stipulate to the accuracy of the testimony; he can attack the defense expert through legitimate cross-examination; or he can ignore the testimony altogether.  But a prosecutor cannot attack the expert with non-evidence, using irrelevant, insulting cross-examination and baseless argument designed to mislead the jury and undermine the very purpose of the rule.  A prosecutor is surely entitled to an opinion as to the persuasiveness or validity of mental health evidence presented but must nevertheless adhere to established rules and standards in the presentation of evidence and argument in the courtroom.

¶15     *Knowing* behavior is established by invoking, among other things, objective factors that include "the situation in which the prosecutor found himself, the evidence of actual knowledge and intent and any other factors which may give rise to an appropriate inference or conclusion."  *Pool*, 139 Ariz. at 108 n.9, 677 P.2d at 271 n.9.  Applying this standard, there can be no doubt that Zawada, an experienced prosecutor, was aware of his direct disobedience of a court rule.

¶16      Zawada's misconduct occurred in part during cross-examination when he accused the psychiatrist of indecision and of reaching a conclusion of insanity only *after* he was hired by the defense and paid for his services.  Zawada knew there was no evidentiary basis for the accusation, nor did he offer one.  He continued the attack in closing argument, suggesting, still without evidence, that defense counsel paid money to the mental health expert to fabricate a diagnosis of insanity for the defendant.  This was not a case of negligence; rather, it was an intentional, knowing attack by Zawada on defense counsel, on the experts, and on the mental health profession.  Zawada's actions unquestionably indicate he knew his conduct constituted outright disobedience in violation of ER 3.4(c).

### (2)  Zawada's Mental State

¶17      The hearing officer's conclusion with regard to Zawada's mental state in violating the rules is equally clear: "[He] violated the duties to his client and to the legal system. *The conduct was intentional*, although [he] believed that his actions were well-founded and appropriate." Based on the complete record, the court concludes that Zawada's rebuttal arguments and cross-examination of the experts were grossly improper and deliberate and thus in violation of the rule that protects the defendant's right to present the defense of insanity.  With

11

specific reference to our decision in *Hughes*, we declared in *Jorgensen*:

> [Zawada's method of prosecution] was "a dishonest way to represent the State . . . , and it was especially dishonest . . . where the evidence of insanity was substantial, and where the [s]tate had no evidence that [Defendant] had fabricated an insanity defense." We unanimously concluded that the "evidence of mental illness was overwhelming" and Defendant's case for acquittal on grounds of insanity was "substantial." The state overwhelmed Defendant's insanity defense, "but it did not do so with evidence; it did so with prosecutorial misconduct." We condemned this win-by-any-means strategy, agreeing with Defendant's argument that it "was a direct attempt to . . . prejudice the jury" and to put the fear of acquittal in the jurors' minds.

198 Ariz. at 390-91, ¶ 2, 10 P.3d at 1177-78 (second alteration in original) (internal citations omitted).

¶18   In his attempt to discredit, Zawada attacked the experts, their profession and credibility through disingenuous, baseless argument and cross-examination.  This was highly improper and provides ample evidence that Zawada's actions were intentional and knowing, aimed at thwarting Hughes' insanity defense and gaining a conviction at any cost.

### (3) Potential or Actual Injury

¶19   The more serious the injury, the more severe should be the sanction.  *See, e.g., In re Cardenas*, 164 Ariz. 149, 152, 791 P.2d 1032, 1035 (1990) (noting that the difference between ABA *Standards* 4.41(b) (calling for disbarment) and 4.42(a) (calling for suspension) is the seriousness of the injury).  Serious

12

injury was caused by Zawada's misconduct.  The criminal justice system suffered, as did society as a whole.  When serious crime goes unpunished everyone suffers, not because the suspect was unidentifiable, but because a prosecutor's misconduct bars retrial as a matter of double jeopardy.  Disciplinary Commissioner Cahill spoke accurately in his dissent from the Commission's recommendation:  "Simply put, [Zawada's] knowing, deliberate and intentional misconduct either caused a murderer to walk free, or it helped convict an innocent man of first-degree murder.  Either way, no harm could be more serious."

### (4)  Aggravating vs. Mitigating Factors

¶20    The hearing officer considered both aggravating and mitigating factors in determining the proper sanction to be recommended.  Pursuant to ABA *Standard* 9.22(c), the officer found that Zawada engaged in a pattern of misconduct consisting of serious violations that occurred during both the *Hughes* trial and the *Pool* trial.[3]    Together, these cases demonstrated repeated instances of misconduct in cases that involved serious consequences.  We agree with that finding.  In addition, we agree, pursuant to ABA *Standard* 9.22(i), that Zawada's

---

[3]    Zawada was the prosecutor in *Pool*, and there, as in *Hughes*, double jeopardy attached because Zawada "intentionally engaged in improper conduct for the purpose of forcing defendant to seek a mistrial so that the prosecution could procure a new indictment with correct charges." *Pool v. Superior Court*, 139 Ariz. 98, 107, 677 P.2d 261, 270 (1984).  The court found his conduct to be "egregiously incorrect." *Id*.

13

substantial experience in the practice of law should be treated as an aggravating factor. The finding of substantial experience is justified by the fact Zawada has practiced law in Arizona since 1979.

¶21  No less important is that much of his experience as an attorney has come through many years working as a prosecutor. Because prosecutors' ethical duties exceed those of lawyers generally, substantial experience as a prosecutor may become a further aggravating circumstance, particularly in cases, as here, where the prosecutor should have learned much earlier to conform his conduct to the rules, but has not done so.[4]

¶22  We addressed this issue squarely in our very recent decision, *In re Peasley*, __ Ariz. __, __, ¶ 40, 90 P.3d 764, 774 (2004), finding that "when a lawyer's substantial experience places that lawyer in a position that would be unavailable to a less experienced lawyer, and that lawyer's experience also affords, or should afford, a greater appreciation of the advantages of eliciting false testimony, substantial experience may be considered a relevant aggravating factor." As a seasoned prosecutor in the Pima County Attorney's Office, Peasley, like

---

[4]  We do agree, in mitigation, that Zawada does not have a prior disciplinary record with the Bar. ABA *Standard* 9.32(a). However, we accord little or no consideration to the absence of a disciplinary record when there is evidence of prior, known misconduct. *See In re Peasley*, __ Ariz. __, __-__ ¶¶ 51-52, 90 P.3d 764, 775-76 (2004). Such is the case here. *See Pool*, 139 Ariz. at 98, 677 P.2d at 261.

Zawada, was given the responsibility of prosecuting capital cases. *Id*. An inexperienced attorney would not be given such responsibility. Further, Peasley's extensive experience as a prosecutor helped him understand how a jury would react to unfavorable evidence. Accordingly, he suborned perjured testimony to destroy the negative inference the jury would otherwise have drawn. *Id*.

¶23 Similarly, Zawada's substantial experience informed him how the jury would react if he did not impeach the defendant's experts. His substantial experience also informed him that an improper cross-examination such as the one he engaged in would affect the defense experts' credibility. As a result, Zawada, without supporting evidence, launched a full scale attack on the credibility of defendant's experts and on the mental health profession in general.

¶24 Thus we conclude, as in *Peasley*, that Zawada's substantial experience as a prosecutor is an aggravating factor. *Cf. Maretick v. Jarrett*, 204 Ariz. 194, 199, ¶ 19, 62 P.3d 120, 125 (2003); *New Jersey v. Torres*, 744 A.2d 699, 708 (N.J. Super. Ct. App. Div. 2000) ("A prosecutor is not simply another lawyer who happens to represent the state. Because of the overwhelming power vested in his office, his obligation to play fair is every bit as compelling as his responsibility to protect the public.").

¶25    Moreover, like the dissenting Commissioner, we find clear evidence that Zawada has refused, and to this day continues to refuse, to acknowledge wrongful conduct both in *Hughes* and in *Pool.* His unwillingness to recognize wrongful conduct has led Zawada to outright hostility. Such an attitude is an aggravating circumstance in itself under ABA *Standard* 9.22(g). At the disciplinary hearing, Zawada stated, "I'm here not because I did anything wrong. I'm not here because I did anything unethical, and I'm not here because I deserve to be punished for anything that's transpired." Since this disciplinary process began, this has been Zawada's attitude. In his own words, Zawada believes that "[t]his Court simply wishes to punish [him] for thinking [differently] on the issue of the admissibility of, reliability of, psychiatric-psychological testimony." He believes this case "expose[s] the Arizona Supreme Court's pro-psychiatry/anti-prosecution position; its pop culture values; it's [sic] overzealousness in pursuit of those values." Finally, he asserts that "there is no precedent in the history of Arizona jurisprudence" to suggest that he acted unethically. As the dissenting Commissioner noted,

> [Zawada] fails to acknowledge that he is single-handedly responsible for much of the law in Arizona on the consequences of extreme prosecutorial misconduct. His sweeping statement about our jurisprudence omits mention of several pertinent cases, each of which addresses whether he has ever done anything unethical. *State v. Pool*, *State v. Hughes*, and *State v. Jorgenson*.

16

It would be difficult, in view of Zawada's acrimonious statements to the hearing officer, to the Disciplinary Commission, and to this court, to conclude that Zawada acknowledges even a single violation. As a result, we find, pursuant to ABA *Standard* 9.22(g), that Zawada's continuing refusal to recognize what is clearly gross misconduct is a further aggravator to be considered in the process of determining the sanction in this case.

### (5) **Proportionality of Discipline Imposed in Analogous Cases**

¶26 The hearing officer correctly noted the absence of Arizona case law with similar facts. The Supreme Court of Florida, however, was confronted with a prosecutorial misconduct case strikingly similar to the case before us. *Florida Bar v. Schaub*, 618 So. 2d 202, 204 (Fla. 1993). That decision, though not binding, is instructive.

¶27 The Supreme Court of Florida suspended Mr. Schaub, a prosecutor, because:

1. During cross-examination, Schaub improperly elicited irrelevant testimony from the defense's expert psychiatrist, Dr. Tanay, that a non-testifying expert had classified him as a "hired gun." Later, in summation to the jury, Schaub again referred to Tanay as a "hired gun."

2. Schaub accused Dr. Tanay of charging $600 per hour for his deposition testimony. Yet, Schaub had a copy of the itemized bill showing Tanay charged $150 per hour.

3. Throughout his cross-examination, Schaub insulted Dr. Tanay, ignored the trial court's rulings on defense objections, and inserted his personal opinions on

17

psychiatry and the insanity defense into his questioning.

*Id*. at 203.

¶28    Like Zawada, Schaub "refus[ed] to acknowledge the wrongful nature of his conduct." *Id*. at 204. And like Zawada, Schaub had substantial experience as a prosecutor. *Id*. Importantly, unlike Zawada, nothing in the Florida opinion suggests that Schaub's misconduct was repetitive, although neither he nor Zawada had a formal disciplinary record. Schaub received a thirty-day suspension. *Id*.

¶29    Suspension from the practice by reason of misbehavior either in the courtroom or in court-related proceedings is not without precedent in Arizona. In *In re Alcorn*, 202 Ariz. 62, 41 P.3d 600 (2002), this court, sua sponte, increased the Commission's recommended discipline of a thirty-day suspension to six months. Alcorn and Feola defended a doctor in a medical malpractice action against the doctor and a hospital. *Id*. at 64, ¶ 9, 41 P.3d at 602. By secret agreement, the injured plaintiff and the defendant doctor effectively pursued a "mock" trial, taking the court's time and resources without disclosing to the judge that the trial was a sham. *Id*. at 65, ¶ 11, 41 P.3d at 603. The agreement between the injured plaintiff and the doctor was concealed from the court even when the judge sensed the possibility that such an arrangement existed and asked about it. *Id*. at 66, ¶ 15, 41 P.3d at 604. The purpose of the sham trial

18

was to help the plaintiff bring the hospital back into the case as a defendant by adducing damning information from the defendant doctor at trial, while at the same time having given the doctor a covenant not to execute on any judgment. *Id*. at 65, ¶ 12, 41 P.3d at 603.

¶30 In holding that a six-month suspension was appropriate, the court found that the attorneys' conduct was knowing and intentional and, among other things, had wasted valuable judicial resources. *Id*. at 74, ¶¶ 42-43, 41 P.3d at 612. The court found several mitigating factors, including a non-selfish motive, a cooperative attitude toward the disciplinary proceedings, and an unlikely repetition of such conduct in the future. *Id*. at 74-75, ¶¶ 45-46, 41 P.3d at 612-13.

¶31 In contrast, Zawada has remained hostile, utterly refusing to cooperate in the disciplinary proceedings. His unwillingness to acknowledge gross misconduct suggests at least some risk that Zawada, given the opportunity, would treat expert witnesses in another case with a serious mental health component in the same manner in which he treated the expert witnesses in *Hughes*. That risk, without appropriate discipline at this point, is unacceptable.

¶32 In *In re Moak*, 205 Ariz. 351, 71 P.3d 343 (2003), also in sua sponte review proceedings, this court increased the Commission's recommended discipline of six months' suspension to

19

six months and one day in order to require Moak to follow the formal application and reinstatement procedure under the rule. *See* Ariz. R. Sup. Ct. 64(e).

¶**33** Moak, the disciplined attorney, withheld vital evidence of his client's injuries sustained in a second car accident before the case went to trial on the first accident. *Id*. at 353-54, ¶ 10, 71 P.3d at 345-46. He thus knowingly misled the jury by withholding relevant evidence as to the occurrence of injuries for which the defendant clearly was not responsible. Equally serious, Zawada misled the jury by attacking the experts with irrelevant interrogation and baseless argument, all without evidence offered in support.

¶**34** Finally, this court disbarred prosecutor Peasley because he knowingly introduced perjured testimony through a police witness in two capital trials. *Peasley*, __ Ariz. at __-__, ¶¶ 65-66, 90 P.3d at 778-79. The distinction between Peasley and Zawada is that Peasley concealed acts amounting to subornation of perjury, while Zawada misled the jury openly, appealing to fear and emotion. Both acts are serious and deserve to be sanctioned. But Peasley's acts, because they involved fraud and concealment within the judicial system, are substantially more serious. Conversely, there was no intentional concealment on Zawada's part.

### (6)  The Proper Sanction

¶35    A mere censure of Zawada or even the imposition of probation without suspension, in our judgment, would undermine the disciplinary process applicable to all lawyers, would contravene the presumptive discipline suggested by the ABA *Standards*, and would be grossly disproportionate to discipline imposed in other cases in which serious misconduct was found.  We agree with the dissenting member of the Disciplinary Commission:

> A public rebuke will do nothing to deter [Zawada].  The Supreme Court's 1984 criticism of his trial tactics in *State v. Pool* – in all practical effect a public censure – had no deterrent effect; he repeated his *Pool* misconduct in *State v. Hughes*.  The Supreme Court's scathing assessment in the *State v. Hughes* opinion also has had no effect; [Zawada] is still right and everyone else is wrong – and biased.  Finally, even *State v. Jorgenson* is not enough to deliver the message to [Zawada].  What else can be said to get him to obey the law?  Why do we think he will heed our censure, when Supreme Court opinions mean absolutely nothing to him?

Disciplinary Commission Report, at 10 (Cahill, dissenting).

¶36    ABA *Standard* 6.22 recommends that suspension be imposed when a lawyer "knowingly" disobeys a court order or rule. *Standard* 6.23, on the other hand, recommends a censure for disobedience that was merely negligent.  Zawada's misconduct in the prosecution of the *Hughes* case was knowing and intentional, not merely negligent.  Further, in light of the aggravating circumstances, including the evidence of prior misconduct in the *Pool* case, the single mitigating factor – absence of prior bar discipline - is not sufficient to justify a lesser sanction.  We

21

must apply discipline here where Zawada has acted knowingly or intentionally, where aggravating factors outweigh mitigating factors, and where substantial damage resulted.

¶37     Sanctions should be reasonably proportionate.  On this record, therefore, we believe that a suspension, together with a subsequent probationary period, a referral to the Member Assistance Program, and requiring continuing education hours, will have the best chance of accomplishing the purposes of lawyer discipline.

**III. Conclusion and Order**

¶38     Based on the record, Mr. Zawada is hereby suspended from the practice of law in Arizona for six months plus one day, beginning thirty days from the date of this opinion.  Further, upon reinstatement, Mr. Zawada shall be placed on probation, under bar supervision, for one year.  He shall also be referred to the Member Assistance Program in which he shall participate under conditions imposed on him by Program officers.  Mr. Zawada shall attend fifteen hours of continuing education that addresses the effective use of and response to psychiatric and psychological testimony, and shall not participate in any case involving a mental health component until such time as he shall have completed the continuing education requirement.  Finally,

Mr. Zawada is ordered to pay the costs and expenses of these disciplinary proceedings.


_____
Charles E. Jones, Chief Justice

CONCURRING:


_____
Ruth V. McGregor, Vice-Chief Justice


_____
Rebecca White Berch, Justice


_____
Michael D. Ryan, Justice


_____
Andrew D. Hurwitz, Justice