IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

**IN THE MATTER OF A MEMBER**
**OF THE STATE BAR OF ARIZONA,**

**APRIL ARLENE SPONSEL,**
**ATTORNEY NO. 23009,**
*Respondent.*

---

No. SB-24-0007-AP
Filed April 11, 2025

---

Appeal of Hearing Panel Opinion and Disciplinary Order from the
Office of the Presiding Disciplinary Judge
The Honorable Margaret H. Downie, Presiding Disciplinary Judge (Ret.)
No. PDJ20239018
**AFFIRMED**

---

COUNSEL:

Jonathan A. Dessaules, David E. Wood, Dessaules Law Group, Phoenix,
Attorneys for April Arlene Sponsel

Craig D. Henley, Stacy L. Shuman, State Bar of Arizona, Phoenix, Attorneys
for State Bar of Arizona

---

JUSTICE BEENE authored the Opinion of the Court, in which CHIEF
JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK,
KING, BRUTINEL (RETIRED),* and JUDGE PERKINS** joined.

---

\* Although Justice Robert M. Brutinel retired prior to the issuance of this
Opinion, he participated in the decision of the Court.
\*\* Justice William G. Montgomery has recused himself from this case.
Pursuant to article 6, section 3 of the Arizona Constitution, Judge Jennifer

---

JUSTICE BEENE, Opinion of the Court:

**¶1**        April Sponsel appealed from a disciplinary panel's (the "panel") decision and order imposing sanctions as a result of her conduct while employed as a prosecutor.  The panel concluded that Sponsel violated Arizona Rules of Professional Conduct ("ERs") 1.1 (competence), ER 1.3 (diligence), ER 3.1 (good faith), and ER 8.4(d) (conduct prejudicial to the administration of justice).  The panel, however, did not find that Sponsel violated ER 3.2 (reasonable efforts to expedite litigation), ER 3.4(a) (obstruction), ER 3.4(c) (knowing disobedience of obligations), ER 3.8(a) (prosecuting a case the attorney knows is not supported by probable cause), and ER 3.8(d) (failure to make timely disclosure of exculpatory or mitigating evidence).  The panel suspended Sponsel from the practice of law for two years and ordered her to pay the State Bar's costs.

**¶2**        By decision order, we affirmed the panel's suspension of Sponsel from the practice of law for two years and stated that an explanatory opinion would follow.  We agree with the panel that Sponsel violated ERs 1.1, 1.3, 3.1, and 8.4(d).  Although we affirm the panel's finding that Sponsel violated ER 3.1, we conclude that it erred in its analysis.  We also affirm the panel's order requiring Sponsel to pay the State Bar's costs.

## BACKGROUND

**¶3**        Sponsel worked as a prosecutor at the Maricopa County Attorney's Office ("MCAO") from May 2004, when she was admitted to practice law in Arizona, until she was placed on administrative leave in March 2021.

## I.      October 2020 Protest Cases

**¶4**        On October 17, 2020, in response to the deaths of George Floyd in Minnesota and Dion Johnson in Arizona, approximately twenty individuals gathered in downtown Phoenix to protest the police as part of

---

M. Perkins of the Arizona Court of Appeals, Division One, was designated to sit in this matter.

the "No Justice No Peace Rally" organized by "Freedom 4 The People." As this group marched, they chanted phrases such as "Black Lives Matter," "All Cops Are Bastards," "No Fascist USA," and "No Racist USA."

¶5          Some protesters wore black clothing and marched in the middle of streets because the police had barricaded several adjoining roads. During the march, several protesters carried umbrellas, shined flashlights at police officers, and moved numerous barricades onto the protest route. The protesters used the umbrellas "to obscure their identities" and "shield their activities." After failing to comply with the police orders to disperse, eighteen individuals were arrested, including three juveniles. Sponsel was assigned to charge and prosecute the adult arrestees.

¶6          On October 20, the Phoenix Police Department ("PPD") submitted to MCAO over 250 pages of police reports relating to the October 17 protest. Many of these reports, however, were incomplete and had "cut and paste" characteristics. Later that day, Sponsel filed a direct complaint in the superior court charging all fifteen adult arrestees with riot, hindering prosecution, and aggravated assault—each offense a class 5 felony. The only videos that Sponsel reviewed before filing the complaint were a "short video compilation prepared by PPD and an AZ Patriots video of the protest."[1]

¶7          On October 27, Sponsel appeared before a grand jury to add gang-related charges against all fifteen defendants. Sponsel alleged that the protesters were members of a gang called "ACAB" (an acronym for the protest chant "All Cops Are Bastards"). *See* A.R.S. § 13-105(8) (defining "[c]riminal street gang"). However, the alleged gang—ACAB—was not listed in the law enforcement database that documents known gangs, and the October 17 cases were not provided to PPD's Gang Enforcement Unit—a "specialized team of police responsible for identifying and investigating criminal street gangs and their members." A City of Phoenix investigation later "found no credible evidence to support the assertion that ACAB [was] a criminal street gang, that it organized the protest of October 17, or was prone to violence." The investigation also concluded that law enforcement and prosecutors conflated various social justice groups and forums "to construct a singular 'ACAB group.'"

---

[1] AZ Patriots is a self-described conservative organization that conducts counterprotests.

¶8          In fact, before filing the charges, Sponsel reviewed several police reports that expressly indicated that no gang was involved in the October 17 protest.  Sponsel also later admitted that this was the first time MCAO had sought criminal street gang charges against protesters, and that charging the protesters with gang offenses "was a novel approach" that "would likely be newsworthy."

¶9          During the grand jury presentation, Sponsel compared ACAB to well-known, violent criminal street gangs such as the Bloods, Crips, Hells Angels, and Mexican Mafia.  Although the grand jury was presented with gang-related charges against fifteen defendants, Sponsel only referenced four defendants in detail to the grand jury.

¶10          Sponsel had access to surveillance footage and approximately 150 body-worn camera recordings, but she did not review any of that footage before the grand jury presentation.  Over 100 hours of recordings were captured from the October 17 protest; however, she only presented an eight-minute video compilation of the incident prepared by PPD to the grand jury.  Nonetheless, the grand jury returned a true bill and Sponsel filed an indictment charging each of the fifteen defendants with: conspiracy to commit aggravated assault, a class 2 felony;[2] riot, a class 5 felony; unlawful assembly, a class 1 misdemeanor; and obstructing a public thoroughfare, a class 3 misdemeanor.

¶11          On October 30, MCAO leadership met to review the charges filed against the October 17 defendants.  The meeting focused on the propriety of indicting the fifteen defendants for gang offenses.  After Sponsel obtained the indictment, several other prosecutors expressed serious misgivings over the viability of pursuing gang charges.  In response to her colleagues' concerns, Sponsel stated, among other things, that the October 17 defendants had participated in previous "riots" in Phoenix, that photographs of the protesters' hands with sharpened fingernails were taken, and an umbrella with a sharpened tip was seized from the protesters—evidence that purportedly would establish collusion among

_____

[2]  Regarding this charge, the indictment alleged that each defendant conspired to commit the offense of participating in a criminal street gang; assisting a criminal street gang; threatening or intimidating in furtherance of a criminal street gang; aggravated assault; and/or hindering prosecution.

the October 17 defendants and their intent to injure police officers. Sponsel's colleagues found these representations to be critically important to the viability of the gang charges.

¶12        One of the individuals arrested and later named in the indictment was Ryder Collins, a nurse from Prescott Valley who had traveled to Phoenix on October 17 to take pictures of the city at sunset. After taking pictures of various downtown buildings, Collins watched the protest. As he did this, he walked down a street with two members of the AZ Patriots. The AZ Patriots members were videotaping the protest, and their video captured Collins's conversation with them. On the video, he explained he was "just doing street photography" when he "saw this shit pop off." Sponsel acknowledged that she viewed the AZ Patriots's video before filing the criminal charges against Collins.

¶13        After the police arrested Collins, he immediately advised them that he was unaffiliated with the protest and that he did not hear the police commands to disperse. While officers booked Collins into custody, he spoke with several of the other arrestees. One of these individuals informed police officers that Collins was not part of the protest. In a video that captured the booking process, a police officer can be heard saying that Collins was not with the protesters and should not be charged.

¶14        Collins was charged with one count of rioting, along with other offenses, and spent the night in custody. He appeared in court the next day and when the judge failed to find probable cause regarding the riot charge, he was released on his own recognizance.

¶15        In January 2021, Collins's attorney moved to dismiss, or in the alternative, to remand to the grand jury for a redetermination of probable cause. Thereafter, a local television station aired several news stories critical of MCAO's decision to charge the October 17 defendants with gang offenses. Several experienced MCAO prosecutors were concerned by the media's criticisms, which prompted further review of the evidence that Sponsel claimed supported the gang charges.

¶16        Ryan Green, an experienced MCAO gang prosecutor, reviewed the evidence in the October 17 protest cases and found that, contrary to Sponsel's earlier assurances, there were no pictures of protesters with sharpened fingernails, and the umbrella taken from the protesters did

not have a sharpened tip. Green also discovered that the October 17 defendants possessed "protest-related signs" and "political stickers" — evidence that undermined Sponsel's claim of gang activity and supported the claim that the October 17 defendants were engaged in a lawful protest.

¶17 On February 12, 2021, Sponsel gave a presentation to MCAO leadership and argued that there was sufficient evidence to continue with the gang charges. Green disagreed with Sponsel's assessment of the evidence and later testified at her disciplinary hearing that he "was never presented with any evidence that would satisfy that [MCAO] had sufficient evidence to prove the gang charges." The information presented by Sponsel suggested that various individuals had simply shown up at the October 17 protests in response to social media postings.

¶18 After Sponsel's presentation, MCAO leadership concluded that there was insufficient evidence to proceed with the gang offenses. Accordingly, the County Attorney decided to request dismissal of all charges against the October 17 defendants.

¶19 The superior court dismissed all charges against the October 17 defendants without prejudice on February 18, 2021. The next day, MCAO moved to dismiss the charges against Ryder Collins with prejudice. Shortly thereafter, MCAO placed Sponsel on administrative leave and began an investigation into other cases she prosecuted in 2020.

## II. Other 2020 Cases

### A. Charles Walker

¶20 In June 2020, a Maricopa County Sheriff's Office ("MCSO") deputy responded to a call about a person who was carrying a pipe and was suspected of shoplifting sunglasses and a pen. When the deputy approached a person who matched the description, the person ran away. After a chase and a struggle, Charles Walker was arrested.

¶21 The arresting deputy had a small puncture wound to his hand and a pen was found at the location of the arrest. MCSO video footage of the arrest does not show either a pen or a stabbing, but there were photographs of the minor injury to the deputy's hand. When asked how he was injured, the deputy stated he did not know.

**¶22**      MCSO requested that Walker be charged with aggravated assault, either a class 4 or class 5 felony, depending on the severity of the deputy's injury. Sponsel, however, filed a direct complaint charging Walker with: aggravated assault, a class 2 dangerous felony; resisting arrest, a class 6 felony; and shoplifting, a misdemeanor.

**¶23**      The alleged aggravated assault charge required that Walker intentionally place an officer in reasonable apprehension of imminent physical injury using a dangerous instrument. *See* A.R.S. §§ 13-1203(A)(2), -1204(A)(2), -1204(G). "Dangerous instrument" means "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury." A.R.S. § 13-105(12). Sponsel asserted that the pen found on the ground after Walker's arrest was a "dangerous instrument." Sponsel later admitted that she did not review the MCSO video or photographs from Walker's arrest before filing the direct complaint.

**¶24**      In August 2020, Sponsel's colleague presented Walker's case to a grand jury using materials Sponsel prepared for him. However, Sponsel had not reviewed the body camera footage or photographs in preparing for the grand jury presentation even though they had been available to her for almost two months. Sponsel also failed to provide Walker's counsel with photographs of the deputy's injury.

**¶25**      An MCAO review of the case determined that there was no evidence that Walker used the pen to stab the deputy. And while an inference from circumstantial evidence could be made that Walker stabbed the deputy, MCAO concluded that the dearth of evidence did not establish an adequate basis justifying the class 2 dangerous felony charge.

**¶26**      Maricopa County Attorney Rachel Mitchell ("Mitchell") later reviewed Walker's case and concluded that it had been overcharged. Mitchell stated that although the deputy sustained a "small injury" to his hand, the evidence did not support a class 2 dangerous felony charge.

**¶27**      On August 5, 2021, MCAO moved to dismiss the aggravated assault charge against Walker, which the superior court granted. Walker's attorney then moved to modify Walker's release conditions so he could be released. By that time, Walker had been incarcerated for 412 days.

### B.  Richard Villa

**¶28**      In August 2020, a protest was held in downtown Phoenix. During the protest, PPD made several arrests that resulted in multiple individuals being charged with criminal offenses, including Richard Villa.

**¶29**      Initial law enforcement reports indicated that Villa threw fencing at police officers.  Law enforcement requested that Villa be charged with a class 6 felony for assaulting a police officer.  However, based on those same reports, Sponsel charged Villa with four counts of aggravated assault, class 2 dangerous felonies, alleging that he used a fence as a dangerous instrument.  As previously noted, the statutory definition of "dangerous instrument" is "anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury."  § 13-105(12).

**¶30**      Later, PPD body camera video reflected that Villa did not throw the fence at police.  Rather, the video showed that Villa pushed the fence while the police officers attempted to put it back in place.  A section of the fence fell over, but it did not cause any significant injuries to the police officers.  Sponsel, however, failed to dismiss the class 2 dangerous felony charges or amend the indictment to support lesser offenses.

**¶31**      Mitchell testified at Sponsel's disciplinary hearing that the grand jury presentation was inaccurate and that the body camera footage did not support the description of Villa's conduct that Sponsel provided to the grand jury.  Mitchell stated that the evidence did not support charging Villa with a class 2 felony.

## III.    State Bar Disciplinary Proceedings

**¶32**      In June 2022, following an internal ethics investigation, MCAO terminated Sponsel's employment.  The results of the investigation showed that Sponsel engaged in "a disturbing pattern of excessive charging and a failure to review available evidence."

**¶33**      The State Bar filed a two-count disciplinary complaint against Sponsel in December 2022.  In count one, the State Bar alleged that she violated ERs 1.3, 3.2, 3.3(a), 3.4(a), 3.8(d), and 8.4(d), which involved

allegations of ethical misconduct pertaining to discovery and disclosure in criminal proceedings brought several years before the October 2020 protest. In count two, the State Bar asserted that Sponsel violated ERs 1.1, 1.3, 3.1, 3.2, 3.4(a), 3.4(c), 3.8(a), 3.8(d), and 8.4(d) in prosecuting both the October 2020 protest cases and the cases involving Walker and Villa. The State Bar and Sponsel moved for partial summary judgment. The presiding disciplinary judge denied both motions.

¶34 After a seven-day disciplinary hearing in which thirty witnesses testified, including Sponsel, the panel found that the State Bar failed to prove the allegations in count one. Regarding count two, the panel found that Sponsel violated ERs 1.1, 1.3, 3.1, and 8.4(d), but determined that the State Bar did not prove by clear and convincing evidence that she violated ERs 3.2, 3.4(a), 3.4(c), 3.8(a), or 3.8(d).

¶35 In considering the appropriate sanction for these violations, the panel found four aggravating factors and three mitigating factors. With respect to the aggravating factors, the panel found that Sponsel engaged in multiple offenses of ethical misconduct, that she refused to acknowledge the wrongful nature of her conduct, the vulnerability of the victims, and her substantial experience in the practice of law. The three mitigating factors consisted of absence of a prior disciplinary record, her character or reputation, and the imposition of other penalties or sanctions. The panel found that the aggravating factors outweighed the mitigating factors and suspended Sponsel from the practice of law for two years.

¶36 Sponsel appealed the panel's various findings of fact and conclusions of law and the sanction.[3] In a decision order, we affirmed the panel's imposition of a two-year suspension from the practice of law. We also indicated this Opinion would follow. We have jurisdiction pursuant to article 3 and article 6, sections 1, 5(3), and 5(6) of the Arizona Constitution.

**DISCUSSION**

**I.       Standard of Review**

¶37 "We review the panel's conclusions of law de novo and its findings of fact by a clearly erroneous standard." *In re Martinez*, 248 Ariz.

---

[3]  The State Bar filed a cross-appeal disputing the panel's disposition regarding count one but later withdrew its cross-appeal.

458, 462 ¶ 6 (2020); Ariz. R. Sup. Ct. 59(j). "Findings are clearly erroneous if they are not supported by reasonable evidence." *In re Alexander*, 232 Ariz. 1, 5 ¶ 11 (2013). Regardless of this deferential standard, "this [C]ourt retains the ultimate authority to find facts, make conclusions of law, and impose discipline." *In re Marquardt*, 161 Ariz. 206, 215 (1989); *see also In re Levine*, 174 Ariz. 146, 149 (1993) ("In reviewing disciplinary proceedings . . . we are an independent trier of both fact and law . . . .").

## II.    Professional Misconduct

**¶38**        The State Bar must prove misconduct by clear and convincing evidence. *In re Martinez*, 248 Ariz. at 462 ¶ 6; Ariz. R. Sup. Ct. 58(j)(3). Accordingly, the State Bar must show that it is "highly probable" that the allegations are true. *In re Alexander*, 232 Ariz. at 5 ¶ 11.

### A.  ER 1.1: Competence

**¶39**        ER 1.1 provides that "[a] lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Comment 5 to ER 1.1 emphasizes that the competent handling of a legal matter "includes inquiry into and analysis of the factual and legal elements of the problem," and that "complex transactions ordinarily require more extensive treatment than matters of lesser complexity and consequence."

**¶40**        The panel found that "Sponsel's knowledge, skill, thoroughness, and preparation were clearly deficient" in the prosecution of the October 17 defendants, Walker, and Villa. Sponsel asserts that the panel's conclusion should be vacated because it adopted the heightened "reasonable likelihood of conviction" standard in its analysis of the alleged ER 1.1 violation. We agree with the panel's determination that Sponsel's conduct violated ER 1.1.

**¶41**        As to the October 17 defendants, the panel correctly found that Sponsel failed to present individualized evidence to the grand jury as to *each* of the fifteen defendants. *See Willis v. Bernini*, 253 Ariz. 453, 460–61 ¶ 24 (2022) ("For a grand jury to return an indictment, it must be convinced 'from all the evidence taken together . . . that there is probable cause to believe *the person under investigation* is guilty of [a] public offense.'"

(alterations in original) (emphasis added) (quoting A.R.S. § 21-413)). Here, Sponsel only mentioned the names of four defendants during her grand jury presentation, thus failing to provide the personalized consideration that is required for ethical representation under ER 1.1. Sponsel relied on an eight-minute PPD video compilation in the grand jury proceedings, and she admitted that she could not identify each individual in this video compilation. Sponsel made her presentation in broad terms: she referred to the defendants as "these guys" and admitted that she "didn't get into that much specifics with the grand jury because [she] didn't feel like [she] needed to." There is no indication in the record or even her own testimony that she presented individualized evidence as to the majority of the October 17 defendants.

¶42 Sponsel's preparation before presenting evidence to the grand jury was similarly deficient. Although over 140 body camera videos from the October 17 protest were available to Sponsel before her grand jury presentation, she admitted to only reviewing seven videos. This type of conduct also lacks the thoroughness required by ER 1.1.

¶43 The panel also properly concluded that Sponsel violated this ethical rule by failing to carefully assess the unique and untested theory of seeking criminal street gang charges against the October 17 defendants. A novel, complex criminal prosecution demands a heightened level of knowledge, skill, thoroughness, and preparation. *See In re Wolfram*, 174 Ariz. 49, 57 (1993) ("We note and consider that these violations occurred in the course of representation in a very serious criminal matter. What might be excusable in handling a traffic violation is not to be tolerated in a charge such as this."). Here, the panel correctly determined that, given the novel and untried theory of charging the October 17 defendants with criminal street gang charges, ER 1.1 required Sponsel to be "more cautious, more thorough, and more circumspect" in her preparation of this unique prosecution.

¶44 Sponsel's conduct concerning the Walker and Villa prosecutions suffered from the same deficiencies. In the Walker case, Sponsel admitted that she did not review the MCSO video or photographs from that incident before filing the direct complaint. Similarly, in preparing to present Walker's case to the grand jury, Sponsel failed to review the body camera video footage or photographs even though they had been available to her for approximately two months.

11

¶45 Regarding the Villa prosecution, Sponsel eventually agreed that the body camera video of the incident established that Villa did not throw the fencing at the police but rather pushed the fencing while the officers attempted to put it back in place—conduct that did not result in any significant injuries to the police officers. Had she reviewed the footage before charging Villa, she would have learned that she lacked a basis for charging him with a class 2 felony. Generally, a lawyer's failure to investigate facts and law necessary to present a claim "crosses the fine line between simple neglect and conduct warranting discipline." *In re Curtis*, 184 Ariz. 256, 262 (1995). Again, this type of conduct is bereft of the thoroughness required by ER 1.1.

¶46 Sponsel argues that, even in light of these facts, the panel erred by finding an ER 1.1 violation because it applied incorrect legal standards, thereby denying her due process. First, she claims that the panel should have limited its analysis to whether there was "probable cause"—as articulated in ER 3.8(a)—to charge the October 17 defendants, Walker, and Villa. Second, she asserts that the panel erroneously adopted the "reasonable likelihood of conviction" standard—MCAO's policy for charging a case. Sponsel misreads the panel's findings.

¶47 First, Sponsel asserts that the "probable cause" standard found in ER 3.8(a) is the sole criterion that the panel should apply when reviewing a prosecutor's charging decisions for alleged ethical violations. We disagree.

¶48 To be sure, a prosecutor who charges a case knowing that it is not supported by probable cause violates ER 3.8(a). *See In re Aubuchon*, 233 Ariz. 62, 72 ¶ 49 (2013). ER 3.8(a) provides that "[t]he prosecutor in a criminal case shall . . . refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause." Sponsel is incorrect, however, in asserting that we assess all alleged ethical violations regarding a prosecutor's charging decision solely for whether the prosecutor's decision is supported by "probable cause." As previously noted, the State Bar alleged that Sponsel violated ER 1.1's competence requirement by failing to act with "thoroughness and preparation reasonably necessary for representation" regarding the prosecutions of the October 17 defendants, Walker, and Villa. Whether probable cause supported Sponsel's charging

decisions—a debatable proposition—is not part of the analysis in determining whether her conduct violated ER 1.1.

**¶49**        Second, Sponsel's claim that the panel erred when it adopted the heightened "reasonable likelihood of conviction" standard when analyzing the ER 1.1 violation is equally unavailing.  Sponsel assumes that because the panel mentioned MCAO's charging standard in its findings of fact, it necessarily relied on this standard in concluding that Sponsel engaged in misconduct.  Not so.

**¶50**        In its order, the panel correctly concluded that "Sponsel did not competently or diligently evaluate the evidence or competently or diligently reassess the existence of 'a reasonable likelihood of conviction' as to each individual."  The panel mentioned MCAO's charging standard only to illustrate what MCAO's policy required to proceed with a prosecution and what was stated in Sponsel's termination letter—not as an independent basis for finding ethical misconduct.  The panel did not make its finding that Sponsel violated ER 1.1 because her charging decisions failed to meet the "reasonable likelihood of conviction" standard; rather, it concluded that her conduct regarding the prosecutions of the October 17 defendants, Walker, and Villa was deficient  in light of the considerable authority that prosecutors wield and the concomitant duty to competently evaluate the propriety of all charges, but particularly those that are new or novel.

**¶51**        Although the panel found Sponsel's conduct to be "deficient" under ER 1.1, we conclude—under our authority to make factual findings in disciplinary proceedings—that the facts presented here support a finding that Sponsel's behavior was more than merely "deficient."  *See In re Marquardt*, 161 Ariz. at 215 (stating that this Court retains authority "to find facts, make conclusions of law, and impose discipline").  Her dilatory conduct in each of the cases—together with her admissions regarding failing to review evidence—showed that these prosecutions lacked an adequate evaluation of existing facts and evidence and an objective consideration of each of the defendant's conduct. Sponsel's conduct here goes well beyond "deficient"—it constituted a complete disregard of her ethical obligation to provide competent representation.  Sponsel did not simply stray into an ER 1.1 violation; she engaged in repeated, affirmative conduct in disregard of her competence obligation.  Consequently, there is clear and convincing evidence that Sponsel violated ER 1.1.

B. ER 1.3: Diligence

¶52        ER 1.3 states: "A lawyer shall act with reasonable diligence and promptness in representing a client." "Diligence requires the exercise of caution and care in the handling of legal matters." *In re Wolfram*, 174 Ariz. at 55.

¶53        The panel concluded that, as to the October 17 defendants, the State Bar proved an ER 1.3 violation because Sponsel "failed to promptly or diligently assess the propriety of adding gang-related charges, and she failed to promptly or diligently review information and evidence after the defendants were indicted." We agree.

¶54        As noted above, Sponsel appeared before the grand jury to add gang-related charges against the October 17 defendants. Sponsel alleged that the protesters were members of a gang called "ACAB"—a group she informed the grand jury was similar to other violent criminal street gangs such as the Hells Angels and the Mexican Mafia. The record here, however, belies that assertion. The police reports about the October 17 protest that Sponsel reviewed prior to her grand jury appearance contained no information that linked the protesters to a gang. In fact, "ACAB" was not listed in the law enforcement database that documents known criminal street gangs and gang members.

¶55        The panel considered additional evidence that supports its ER 1.3 finding. Collins—one of the October 17 defendants—was charged with a gang-related offense because he allegedly possessed "ANTIFA paraphernalia." During the disciplinary hearing, however, Sponsel admitted that the ANTIFA paraphernalia seized by police that she attributed to Collins belonged to another person that was arrested on October 17—a fact she knew before the charges were dismissed against Collins in February 2021.

¶56        Concerning Walker and Villa, the panel found that Sponsel contravened ER 1.3 because she "failed to act with reasonable diligence and promptness in reviewing information available to her—both before and after she filed the class 2 felony charges." Once again, we agree.

¶57        It is uncontroverted that Sponsel did not review the MCSO video or photographs from Walker's arrest before charging him with a class 2 dangerous felony offense.  Similarly, Sponsel did not review the body camera video footage or photographs before preparing the grand jury checklist and draft indictment that was provided to the grand jury in Walker's case, even though the evidence had been available to her for nearly two months.

¶58        It is also undisputed that the body camera video that formed the basis for Villa's arrest does not show that he threw the fencing at police.  Rather, the video shows that Villa pushed the fencing while the officers attempted to put it back in place, and the portion of the fence that fell over onto the police officers did not result in any significant injuries.  Nonetheless, Sponsel charged Villa with four counts of aggravated assault, each offense a class 2 dangerous felony.

¶59        We also reject Sponsel's claim that her heavy caseload justifiably prevented her from diligently and competently handling the October 17 protester cases.  Though a lawyer's workload may assist us in understanding why an attorney lacked diligence in a case, it does not excuse an attorney's unethical conduct.  *See In re Wolfram*, 174 Ariz. at 56.

¶60        Here, Sponsel's claim that her workload prevented her from diligently handling the October 17 protester cases is suspect in light of her request for the assignment.  The panel correctly concluded that if Sponsel was too busy to provide diligent and prompt representation regarding the October 17 protester cases, she should not have asked that these cases be assigned to her.  *See* ER 1.3, cmt. 2 ("A lawyer's work load must be controlled so that each matter can be handled competently.").

¶61        We further conclude, as we did regarding the ER 1.1 violation, that Sponsel's behavior in each of these cases constituted more than mere failure to act with reasonable diligence and promptness.  Proceeding with gang-related charges against the October 17 defendants without evidence to support these offenses constitutes a complete abdication of her prosecutorial duties.  And we reach a similar conclusion regarding the Walker and Villa prosecutions; her actions here go beyond mere inadvertent conduct.  Thus, there is clear and convincing evidence that Sponsel violated ER 1.3.

### C. ER 3.1: Meritorious Claims and Contentions

**¶62** ER 3.1 prohibits a lawyer from bringing or defending a proceeding or asserting issues therein "unless there is a good faith basis in law and fact for doing so that is not frivolous, which may include a good faith and nonfrivolous argument for an extension, modification or reversal of existing law." The panel found, with little explanation, that Sponsel's ER 3.1 violation regarding the October 17 defendants "began at the grand jury stage," and that she violated the same rule concerning Walker and Villa because "she lacked a good faith basis for charging them with class 2 [dangerous] felony offenses."

**¶63** In determining whether a lawyer violated ER 3.1, "[w]e apply an objective standard to assess whether a legal proceeding is frivolous, but we use a subjective standard to determine whether the lawyer acted in good faith." *In re Alexander*, 232 Ariz. at 5 ¶ 13. "To warrant suspension, the evidence must demonstrate that the lawyer knowingly violated ER 3.1." *Id.*

**¶64** We concur in the panel's determination that Sponsel violated ER 3.1; however, its analysis is flawed. Specifically, the panel erred by failing to find that the prosecutions against the October 17 defendants, Walker, and Villa were frivolous and not brought in good faith. The panel should also have found that Sponsel *knowingly* violated ER 3.1.

**¶65** Ample evidence supports the finding that Sponsel's prosecutions against the October 17 defendants, Walker, and Villa were frivolous and not brought in good faith. As previously indicated, Sponsel indicted Collins—an October 17 defendant—on gang-related charges without any evidence indicating that ACAB was a criminal street gang or that Collins was a member of this or any other alleged gang. In fact, after Sponsel indicted the October 17 defendants on gang-related offenses, several of her colleagues questioned the validity of these charges. Further investigation into Sponsel's claims that ACAB constituted a criminal street gang and that the protesters had sharpened umbrella tips and fingernails at the October 17 protest revealed that her representations were false and there was no evidentiary support for the gang charges.

**¶66** Regarding the Walker prosecution, Sponsel later admitted that she indicted him for a class 2 dangerous felony without reviewing the extant body camera evidence. And as to the Villa prosecution, Sponsel later

conceded that the event supporting the dangerousness allegation—the throwing of the fence at police officers—did not occur.

**¶67** Lawyers must "inform themselves about the facts of their clients' cases and the applicable law and determine that they can make good faith and nonfrivolous arguments in support of their clients' positions." ER 3.1 cmt. 2. Sufficient evidence supports a finding that the charges against the October 17 defendants, Walker, and Villa were frivolous, and that by neglecting to review existing evidence before indicting each individual, Sponsel failed to act in good faith.

**¶68** Sponsel argues that the panel erred in its ER 3.1 finding because a violation of that rule cannot be found unless the prosecutor also violates ER 3.8(a)'s prohibition against proceeding with a charge unsupported by probable cause. Sponsel is mistaken. As noted above, ER 3.8(a) prohibits a prosecutor from bringing a charge that is not supported by probable cause. ER 3.1, however, constitutes a distinct ethical violation. This rule prohibits a lawyer from bringing an action when she failed to inform herself about the facts of the case and the applicable law and lacked a good faith basis and nonfrivolous argument in support of the case. Sponsel's interdependent reading of ERs 3.1 and 3.8(a) would preclude a finding of misconduct by a prosecutor for failing to properly investigate a case or improperly continuing the prosecution of a case—as she did here—without a contemporaneous ER 3.8(a) violation. Sponsel's conflation of these two rules is improper.

**¶69** The evidence also supports a finding that Sponsel's conduct against the October 17 defendants, Walker, and Villa constituted a knowing violation of ER 3.1. "To warrant suspension, the evidence must demonstrate that the lawyer knowingly violated ER 3.1." *Id.* at 5 ¶ 13. "A lawyer's motives and knowledge can be inferred from the frivolousness of a claim." *Id.* Recently, we clarified the definition of "knowingly" as it applies to the rules of professional conduct. *In re Witt*, 257 Ariz. 39, 50 ¶ 49 (2024). In *In re Witt*, we adopted the American Bar Association *Standards for Imposing Lawyer Sanctions* ("ABA Standards") definition of "knowingly," which is "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." *Id.* at 50–51 ¶ 49. Although the definition is not a model of clarity, we conclude it provides that a lawyer can act "knowingly"

regardless of whether the lawyer knows that his or her actions violate a specific ethical rule. *Id.*

¶70 Here, Sponsel was aware of the nature and attendant circumstances of her conduct concerning the October 17 defendants that constituted a violation of ER 3.1. Sponsel went before the grand jury on October 27 for the purposes of adding gang-related charges to all fifteen adults arrested on October 17. Before her grand jury appearance, however, Sponsel knew that no PPD report regarding the October 17 protest contained facts that reflected gang involvement. In fact, the police reports that Sponsel reviewed expressly indicated in a designated box that there was *no* gang involvement. Sponsel also knew that there was no police report stating that Collins ran toward officers in an attempt to impede their arrest of the protesters—the alleged conduct justifying his arrest and imposition of felony charges.

¶71 In addition, before the grand jury proceeding, Sponsel had access to surveillance videos and over 148 body camera recordings from the protest yet failed to review any of this evidence. Out of the 100+ hours of footage captured at the October 17 protest, Sponsel only presented the grand jury with an eight-minute compilation video created by law enforcement. Although witnesses at the disciplinary hearing agreed that Sponsel likely could not have reviewed all the video footage from the October 17 protest by October 27, she was not required to seek an indictment by that date. Even if the constitutional protections for in-custody defendants compelled Sponsel to present the gang charges to the grand jury on October 27, nothing prevented her from delaying the grand jury presentation on the remaining defendants until she had conducted a more thorough and individualized review.

¶72 Sponsel's conduct in the Walker and Villa prosecutions also demonstrates that she knowingly violated ER 3.1. As discussed above, Sponsel admitted that she did not review the available MCSO video or photographs from Walker's arrest before filing the direct complaint. She also admitted that, before preparing the case to be presented to the grand jury, she failed to review the evidence despite having nearly two months to do so. Similarly, Sponsel failed to examine the evidence in the Villa prosecution. Although she charged Villa with multiple class 2 dangerous felonies, Sponsel later acknowledged that the factual predicate supporting

the dangerousness allegation—throwing the fence at police officers—never occurred.

**¶73**         The failure to examine evidence before seeking charges against a defendant, and after obtaining an indictment, is inexcusable for any prosecutor, much less a prosecutor of Sponsel's experience. In these prosecutions, Sponsel repeatedly failed to review existing evidence and instead proceeded to indict individuals without conducting a complete and thorough assessment of each individual's case. And in the October 17 protester cases, Sponsel continued this prosecution in contravention of ER 3.1 even after being confronted with the well-founded concerns about the case from her experienced colleagues. For all these reasons, we find that Sponsel knowingly commenced and maintained frivolous prosecutions in violation of ER 3.1.[4]

### D. ER 8.4(d): Misconduct

**¶74**         ER 8.4(d) provides: "It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." "ER 8.4(d) does not require a mental state other than negligence." *In re Alexander*, 232 Ariz. at 11 ¶ 40. An Arizona lawyer may violate the rule without committing any other ethical violation. *See In re Clark*, 207 Ariz. 414, 418 ¶¶ 16–17 (2004). A lawyer's conduct violates ER 8.4(d) if it causes injury or potential injury. *Id.* at 416 ¶ 9 n.3; *see id.* at 418 ¶ 17.

**¶75**         The panel found that Sponsel violated this ethical rule regarding the October 17 defendants, Walker, and Villa by "engag[ing] in conduct that is prejudicial to the administration of justice." Specifically, the panel concluded that Sponsel "violated duties owed to her client, to members of the public, to the legal system, and to the [legal] profession." In reaching this conclusion, the panel noted the harm suffered by Collins and Amy Kaper.[5] Collins testified that he was "terrified" after being arrested, that this incident "shook his faith in law enforcement," and described his arrest and subsequent prosecution as the "hardest time of

---

[4] Although Sponsel's "knowing" conduct may have also constituted an ER 3.8(a) violation—a claim the panel rejected—the State Bar did not appeal the panel's ruling. Accordingly, we do not address this issue.

[5] Kaper was also arrested and charged with the same felony offenses as Collins for participating in the October 17 protest.

[his] life." Kaper recounted how this incident diminished her faith in the justice system. She also stated that she lost her job as a result of her arrest and prosecution, received death threats because of her alleged involvement in the October 17 protests, and now suffers from post-traumatic stress disorder. The eventual dismissal of the cases against Collins and Kaper does not assuage the lasting and profound harm Sponsel caused in the process. Additionally, Walker was incarcerated for 412 days before his case was dismissed, and Villa was charged with a crime without any supporting evidence and would have served a lengthy prison sentence if convicted.

¶76　　　　The panel also credited County Attorney Mitchell's statements that Sponsel's actions "affected the morale" of the office and portrayed MCAO as "lacking integrity." At bottom, the panel found that "the administration of justice was hampered in these cases by a failure to thoroughly review the available evidence and/or to make sound decisions after reviewing such evidence."

¶77　　　　Sponsel contends that the panel erred by blaming her for MCAO's reputational and morale harm and insists that MCAO's injuries are the result of its decision to dismiss the case against the October 17 defendants, which she contends was for "optics" purposes.

¶78　　　　We agree that Sponsel's conduct violated ER 8.4(d). The panel correctly determined that Sponsel's actions caused injury to the lives of the October 17 defendants, Walker, and Villa. By bringing charges without first reviewing the evidence, and by failing to review the charges as the litigation progressed, Sponsel caused significant injury to the defendants in these cases—especially Collins and Kaper. And contrary to Sponsel's claim, MCAO's dismissal of these cases did not cause the harm to its morale or the public perception of the office. Instead, it is more likely that MCAO's subsequent dismissal of the October 17 protest cases rehabilitated its reputation. Sponsel's failure to review relevant evidence before bringing unsupported charges caused injury to the October 17 defendants, Walker, Villa, the public, and the justice system, and thus there is clear and convincing evidence that she violated ER 8.4(d).

## III.　　Alleged Due Process and Ariz. Sup. Ct. R. 47 Violation

¶79　　　　Sponsel also asserts that the panel violated her due process rights and Arizona Supreme Court Rule 47(b) by "changing the allegations

regarding the Walker and Villa prosecutions into entirely different charges of misconduct."[6] We disagree.

**¶80**       Sponsel did not raise this argument to the panel; therefore, she waived these issues unless the alleged error was fundamental. *See Bradshaw v. State Farm Mut. Auto. Ins. Co.*, 157 Ariz. 411, 420 (1988). "The doctrine of fundamental error is sparingly applied in civil cases . . . ." *Id.* Fundamental error occurs if it "goes to the very foundation of a case, or takes an essential right from a party, or deprives a party of a fair trial, or . . . deprives a party of a constitutional right." *Salt River Project Agric. Improvement & Power Dist. v. Westinghouse Elec. Corp.*, 176 Ariz. 383, 387 (App. 1993) (internal citations omitted). To prevail under this standard, the proponent of the error must establish that both fundamental error and prejudice occurred. *See State v. Strong*, 555 P.3d 537, 553 ¶ 45 (Ariz. 2024).

**¶81**       Because "state bar disciplinary proceedings are adversarial and quasi-criminal in nature, . . . the requirements of procedural due process must be met." *In re Brady*, 186 Ariz. 370, 373 (1996). "These requirements include fair notice of the charges made and opportunity for explanation and defense." *Id.* In addition, Arizona Supreme Court Rule 58(a) provides that complaints in state bar disciplinary proceedings must "be sufficiently clear and specific to inform a respondent of the alleged misconduct." *See also* Ariz. R. Civ. P. 8(e)(1) (incorporated in disciplinary hearings by Arizona Supreme Court Rule 48(b)).

**¶82**       Count two of the State Bar's complaint sets forth the allegations regarding Sponsel's misconduct in the Walker prosecution. As noted above, the State Bar asserts that Sponsel obtained an indictment against Walker for aggravated assault, a class 2 dangerous felony, among other charges, in violation of several ethical rules. The complaint specifies the ethical rules that the State Bar alleges Sponsel violated in the Walker prosecution.

**¶83**       The State Bar's allegations regarding Sponsel's misconduct in the Villa prosecution are also described in count two of the complaint. As

---

[6] Rule 47(b) addresses amending pleadings in a disciplinary hearing. Rule 47(b) provides in part that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."

in the Walker case, the State Bar argues that Sponsel obtained an indictment against Villa for four counts of aggravated assault, each a class 2 dangerous felony, in contravention of several ethical rules. The complaint also indicates the specific ethical rules that Sponsel allegedly violated in the Villa prosecution.

¶84 Before the disciplinary hearing, Sponsel filed a motion for more definite statement. In the motion, she argued that the complaint was lacking specificity and required her to "guess which [e]thical [r]ule applies . . . and to guess what facts led to alleged violations."

¶85 In denying Sponsel's motion, the presiding disciplinary judge ("PDJ") concluded:

> The State Bar's 63-page, 272-paragraph complaint is extremely detailed. After setting forth the factual allegations pertaining to each count, the State Bar identifies the alleged ethical violations and offers a concise description of the conduct corresponding to the alleged rule violation.

¶86 The PDJ added that "[t]he Bar's complaint is not one that states only legal conclusions, without any supporting factual allegations" and noted that Sponsel was able to file a detailed answer to the complaint, thereby contradicting her claim that the complaint was vague or ambiguous. Lastly, the PDJ stated that through the discovery and disclosure process, the parties' claims and defenses could be further explored. Thus, Sponsel could "propound discovery requests or seek additional information" if she could not discern the basis for an alleged violation. Sponsel, however, never sought further clarification of the complaint.

¶87 We conclude that the State Bar's complaint was sufficiently clear and specific to inform Sponsel of the alleged misconduct and that the charges were not altered during the proceeding. The alleged ethical violations were sufficiently pleaded in the complaint, and the State Bar specifically identified the conduct it deemed actionable throughout the complaint. Sponsel was not asked to defend against any charges that were not identified in the complaint, and she was provided an opportunity to present a defense to each charge. Accordingly, no error, much less fundamental error, occurred here.

## IV.  Alleged Separation of Powers Violation

**¶88**         Sponsel also contends that the panel violated the separation of powers doctrine, *see* Ariz. Const. art. 3, by finding misconduct based upon its application of an incorrect legal standard.  We disagree.

**¶89**         Article 3 of the Arizona Constitution prohibits any department of the government from exercising the powers of the other departments.  Ariz. Const. art. 3; *Mecham v. Gordon*, 156 Ariz. 297, 300 (1988).  Thus, the critical question in a separation of powers claim is whether the exercise of power by one branch of government usurps the power from another branch of government.  *New York v. United States*, 505 U.S. 144, 182 (1992); *Martin v. Reinstein*, 195 Ariz. 293, 322 ¶ 105 (App. 1999).  The power to discipline attorneys belongs to the judicial department.  *See* Ariz. Const. art. 6, § 3; *In re Shannon*, 179 Ariz. 52, 76 (1994).

**¶90**         Sponsel correctly notes that the executive branch has exclusive authority to decide what criminal charges to file.  *State v. Prentiss*, 163 Ariz. 81, 85 (1989).  She also accurately states that the ethical rules prohibit a prosecutor from advancing a charge that the prosecutor knows is not supported by probable cause.  *See* ER 3.8(a).  Here, however, Sponsel incorrectly argues that the panel violated the separation of powers doctrine by adopting the findings from her MCAO termination letter, which stated that her charging decisions regarding Walker and Villa failed to meet the executive branch standard of "reasonable likelihood of conviction," rather than focusing on whether her charging decisions were supported by probable cause.

**¶91**         Sponsel's claim fails because, as discussed earlier, the panel did not base its findings of ethical violations on Sponsel's failure to meet MCAO's "reasonable likelihood of conviction" standard.  *See supra* ¶¶ 40, 46, 49–51. Sponsel's argument once again incorrectly assumes that, because the panel's findings of fact mentioned MCAO's higher charging standard, it necessarily relied on that standard when it concluded that she engaged in misconduct.  As noted above, the panel concluded that Sponsel violated ERs 1.1, 1.3, 3.1, and 8.4(d) because her conduct contravened the specific requirements set forth in each of those ethical rules.  *See supra* ¶ 50.  Thus, the panel did not usurp an executive branch power when it concluded that Sponsel had engaged in ethical misconduct.

23

## V.      Sanction Imposed

**¶92**      The State Bar requests that we affirm the panel's sanction suspending Sponsel from the practice of law for two years.  Sponsel contends that she did not engage in ethical misconduct and, therefore, no sanction is warranted.

**¶93**      The imposed disciplinary sanction is a question of law that we review de novo.  *In re Alexander*, 232 Ariz. at 13 ¶ 48.  We independently review the panel's sanction and do not defer to the panel because this Court is responsible for deciding the appropriate sanction.  *Id.*  In determining the appropriate sanction, we are guided by the ABA Standards and, when appropriate, a proportionality analysis.  Ariz. R. Sup. Ct. 58(k); *In re Alexander*, 232 Ariz. at 13 ¶ 49.

**¶94**      "The sanction . . . is tailored to the unique circumstances of the case." *In re Alexander*, 232 Ariz. at 13 ¶ 49.  "[ABA] Standard 3.0 lists four factors for courts to examine in deciding an appropriate sanction: '(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors.'" *Id.*

### A.  Duty

**¶95**      We recognize that prosecutors have a "unique role in the justice system." *In re Martinez*, 248 Ariz. at 463 ¶ 8.  As a prosecutor, Sponsel's duty was "not to seek convictions and sentences but rather to seek justice." *Id.* ¶ 7.  She had a duty to "refrain from improper methods calculated to produce a wrongful conviction [and] to use all proper methods to bring about a just conviction." *Pool v. Superior Court*, 139 Ariz. 98, 103 (1984).  Here, Sponsel failed to carry out this responsibility.

**¶96**      Accordingly, we concur with the panel's conclusion that Sponsel violated her duty to the public by violating ERs 1.1 and 1.3.  She also violated her duty to the justice system by violating ERs 3.1 and 8.4(d).  Consequently, ABA Standards 4.4 (lack of diligence), and 7.2 (violations of duties owed as a professional) are applicable.

B. Mental State

¶97        Sponsel's mental state when she violated her duties to the public and the justice system affects the presumptive sanction. *In re Witt*, 257 Ariz. at 49 ¶ 42. The ABA Standards "recommend more severe sanctions for intentional or knowing misconduct than negligent misconduct, which threatens less harm." *In re Alexander*, 232 Ariz. at 13–14 ¶ 52.

¶98        The relevant standards, as identified by the panel, are ABA Standards 4.42, 7.2, and 7.3. We agree that, applying these standards, suspension is appropriate. First, Sponsel knowingly filed frivolous complaints. *See* ABA Standard 4.42; *supra* ¶¶ 69–73. Second, Sponsel's actions with regards to the October 17, Walker, and Villa cases demonstrate a pattern of misconduct. *See* ABA Standard 4.42; *supra* ¶¶ 69–73. Sponsel not only failed to review the evidence in one case but failed to do so on numerous occasions. And third, Sponsel's knowing violations caused injury to the public and the justice system. *See* ABA Standard 7.2.

¶99        Sponsel also asserts that the two-year suspension is improper and realleges that the panel erred in concluding that she violated ER 3.1 absent a violation of ER 3.8(a). For the reasons previously explained in discussing Sponsel's ER 3.1 violation, we reject her argument and again conclude that Sponsel knowingly violated ER 3.1. *See supra* ¶ 68.

C. Potential or Actual Injury

¶100       ABA Standards 4.42 and 7.2 each provide that suspension is the presumptive sanction if a lawyer's knowing misconduct injures a client or party. ABA Standard 7.2 also states that suspension is warranted if the misconduct causes injury to "the public, or the legal system." The panel determined that Sponsel's maintenance of the prosecutions against the October 17 defendants, Walker, and Villa caused injury to these individuals and the legal process.

¶101       Sponsel argues that her conduct did not constitute ethical misconduct and that any injury suffered by MCAO was not caused by her conduct but was instead the result of MCAO's decision to dismiss the October 17 protest cases. She also asserts that the harm to MCAO's office

morale and image of integrity was self-inflicted—a result of MCAO's dismissal of the cases for "optics" purposes. We disagree.

¶102    As previously explained, Sponsel's misconduct had widespread and harmful consequences. *See supra* ¶¶ 75–78. Collins and Kaper described the harm they suffered along with their diminished faith in the justice system. County Attorney Mitchell testified how Sponsel's actions damaged office morale and portrayed MCAO as "lacking integrity." Gang Bureau Chief Heather Livingstone testified about how Sponsel's conduct sowed mistrust about the gang bureau, despite the fact the bureau had nothing to do with the protester prosecutions. Finally, the record supports the panel's finding that "the administration of justice was hampered in these cases by a failure to thoroughly review the available evidence and/or to make sound decisions after reviewing such evidence." Thus, ample evidence supports the panel's finding that Sponsel's misconduct injured a party and the legal process.

## D. Aggravating and Mitigating Factors

¶103    Because Sponsel engaged in knowing misconduct that injured the October 17 defendants, Walker, and Villa, the presumptive sanction in this case is suspension. *See* ABA Standards 4.42, 7.2. Imposition of a sanction, however, requires consideration of any pertinent aggravating and mitigating factors. *In re Martinez*, 248 Ariz. at 471 ¶ 54; *see also* ABA Standard 9.1.

¶104    The panel found, without elaboration, the existence of four aggravating factors: (1) "multiple offenses" (ABA Standard 9.22(d)); (2) "refusal to acknowledge wrongful nature of conduct" (ABA Standard 9.22(g)); (3) "vulnerability of victim" (ABA Standard 9.22(h)); and (4) "substantial experience in the practice of law" (ABA Standard 9.22(i)). It also found three mitigating factors: (1) "absence of prior disciplinary record" (ABA Standard 9.32(a)); (2) "character or reputation" (ABA Standard 9.32(g)); and (3) "imposition of other penalties or sanctions" (ABA Standard 9.32(k)). Aggravating factors need only be supported by reasonable evidence. *In re Abrams*, 227 Ariz. 248, 252 ¶ 27 (2011).

¶105    Sponsel challenges the findings of all aggravating factors asserting that the claimed misconduct "did not exist," but she does not offer any arguments that were not previously rejected. We agree with the panel's

findings regarding the applicable aggravating factors. We also concur in the panel's finding of mitigating factors. We further observe that the absence of a prior disciplinary record is often afforded substantial mitigating weight but that this factor's weight is diminished when the lawyer refuses to recognize the wrongfulness of her conduct. *See* ABA Standard 9.32(a); *see also In re Bemis*, 189 Ariz. 119, 122–23 (1997). As the panel correctly noted, Sponsel refused to acknowledge any misconduct.

## VI. Proportionality Review

**¶106** When sanctioning lawyers, we may consider the sanctions imposed in similar cases "to preserve some degree of proportionality, ensure that the sanction fits the offense, and avoid discipline by whim or caprice." *In re Dean*, 212 Ariz. 221, 225 ¶ 24 (2006) (internal quotation marks omitted) (quoting *In re Struthers*, 179 Ariz. 216, 226 (1994)). We remain mindful that "our primary obligation is to tailor the discipline according to the facts in each case." *In re Levine*, 174 Ariz. at 174.

**¶107** Here, the panel analyzed four attorney discipline cases involving prosecutors for comparison purposes: *In re Peasley*, 208 Ariz. 27 (2004); *In re Zawada*, 208 Ariz. 232 (2004); *In re Aubuchon*, 233 Ariz. 62 (2013); and *In re Martinez*, 248 Ariz. 458 (2020). The panel determined that Sponsel's misconduct was not as egregious as the misconduct that resulted in the disbarment of the prosecutors in *Peasley* and *Aubuchon*. The panel found, however, that Sponsel's misconduct was substantially more serious than the misconduct addressed in *Zawada* and *Martinez*—in which the imposed sanctions were suspension and reprimand, respectively.

**¶108** After determining that the aggravating factors outweighed the mitigating factors, the panel found that, given the "immense harm" caused by Sponsel's misconduct, a two-year suspension was warranted. It concluded that this sanction was "necessary to achieve the purposes of the attorney discipline system—particularly the goals of instilling public confidence in the integrity of the legal system and deterring similar misconduct."

**¶109** In arguing against suspension, Sponsel contends that the panel erroneously relied on *Zawada* because the six-months-and-a-day suspension in that case was based on the prosecutor's intentional

conduct—a determination the panel failed to make here. Sponsel misapplies our reasoning in *Zawada*.

¶110 In addressing *Zawada's* mental state for purposes of an appropriate sanction, this Court found that his conduct was "highly improper" and provided evidence that his actions were "intentional and knowing." *Zawada*, 208 Ariz. at 238 ¶ 18. Sponsel is correct that the panel did not find her actions to be intentional, but the evidence presented at the disciplinary hearing established that Sponsel knowingly failed to assess relevant evidence—on multiple occasions—before seeking to indict individuals on serious felony charges. And in one instance, her unethical conduct resulted in what the panel determined to be "immense harm" to Walker, who was incarcerated for 412 days before MCAO filed a motion to dismiss the charges in his case. Although Sponsel did not act intentionally, she acted knowingly and her actions in these cases were improper and indefensible.

¶111 Proportionality review is an "imperfect process." *See In re Owens*, 182 Ariz. 121, 127 (1995). However, we agree with the panel's analysis and conclude that Sponsel's sanction is tailored to the unique circumstances of this case, especially in light of the widespread and harmful consequences noted above. *See supra* ¶ 102. Thus, suspension from the practice of law for two years is a proportionate sanction.

## VII.  Appropriate Sanction

¶112 In determining an appropriate sanction, we must remember that the primary objectives of lawyer discipline are "(1) to protect the public and the courts and (2) to deter the [disciplined] attorney and others from engaging in the same or similar misconduct." *In re Alexander*, 232 Ariz. at 15 ¶ 63 (alteration in original) (quoting *In re Zawada*, 208 Ariz. at 236 ¶ 12). We have recognized that "[f]ulfilling these objectives promotes confidence in the integrity of the disciplinary process." *Id.* Importantly, though, "[t]he sanction is not intended to punish the disciplined lawyer." *Id.*

¶113 After considering the aggravating and mitigating factors involved, and comparing similar cases, we conclude that the presumptive sanction of suspension is warranted. We are also convinced that Sponsel should be suspended for two years. Such a lengthy suspension is "necessary to achieve the objectives of lawyer discipline." *Id.* at 16 ¶ 65.

Indeed, nothing less than this sanction would suffice given the egregiousness of the conduct and the impact on those who were wronged. Sponsel acted knowingly and should not have engaged in this conduct given her experience and the concerns raised by her colleagues.

**¶114** Unlike the lawyer in *In re Alexander*, Sponsel did not rely on a supervising attorney in maintaining a lawsuit that lacked legal and factual merit. *See id.* at 7 ¶ 21. Sponsel was a veteran prosecutor for seventeen years. Her substantial experience made her well aware of the grave consequences of overcharging a case. Moreover, Sponsel's misconduct was not confined to one discrete case. Rather, Sponsel's ethical violations stem from multiple cases involving several defendants. For these reasons, we conclude that the two-year suspension is warranted, and Sponsel must demonstrate her rehabilitation before reinstatement.

## CONCLUSION

**¶115** We affirm the panel's general findings that Sponsel committed misconduct by violating ERs 1.1, 1.3, 3.1, and 8.4(d). We further find that Sponsel knowingly violated ER 3.1. We therefore affirm the panel's sanction and suspend her from the practice of law for two years. Sponsel shall also pay the costs and expenses of these proceedings.